Filed 8/30/24; Certified for Publication 9/20/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MACKENZIE YOUNG JAY KIM,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>    Defendants and Respondents. | B331247<br><br>Los Angeles County<br>Super. Ct. No. 20STCV25305 |

APPEAL from an order of the Superior Court of Los Angeles County.  Cherol Nellon, Judge.  Affirmed.

The Wallace Firm, Bradley S. Wallace; and Matthew J. Kita for Plaintiff and Appellant.

Perkins Coie, Steven Williamson, Julie L. Hussey and Gregory F. Miller for Defendants and Respondents.

_____

# SUMMARY

The plaintiff in this lawsuit seeks to hold Uber Technologies, Inc. and related companies vicariously liable for injuries he suffered when he was struck by an automobile driven by Ralph Wilson. Mr. Wilson had been driving for Uber for several hours that evening and had turned his Uber driver app to "offline"—meaning he was not available to receive requests for rides—about four minutes before the accident and more than a mile away from the location of the accident. Mr. Wilson testified that "I cut off my Uber" and "I went to McDonald's, and then I went home, and then is the accident."

The Uber parties moved for summary judgment on the ground they had no duty to plaintiff because Mr. Wilson was acting in his own personal capacity, not as an Uber driver, at the time of the accident. Plaintiff presented evidence that Uber drivers can go from "offline" to "available" within 30 seconds and are able to see an Uber map showing areas of high demand for rides even when they are "offline"; and that Mr. Wilson's recollection of what he was doing during the hours before the accident was contradictory and inconsistent with Uber's records. Plaintiff argued those inconsistencies reflected adversely on Mr. Wilson's credibility and there was a triable issue of fact as to whether he "was operating his vehicle with the intention of switching back to 'available' status at the time of his collision with Plaintiff."

The trial court found plaintiff's arguments speculative; that what Mr. Wilson was doing before the incident was irrelevant to establishing whether he was acting as an Uber driver at the time of the incident; and there was no evidence indicating he was not done driving for the night. The court therefore granted the Uber parties' motion for summary judgment.

We affirm the judgment.

## FACTS

**1. Undisputed Facts: The Parties, the Uber App and the Accident**

Plaintiff Mackenzie Young Jay Kim was a pedestrian in a traffic accident that occurred at about 2:28 a.m. on January 19, 2020, on Santa Monica Boulevard near Bundy Drive. Ralph Davis Wilson III was the driver. Mr. Wilson is a defendant in this lawsuit but not a party to this appeal.

As is generally known, Uber uses technology (the Uber app) to connect riders with drivers who use their personal vehicles. The rider version of the Uber app and the driver version are different. Drivers are "available" to accept riders after they go "online" by logging into the Uber driver app. (All further discussion of the "Uber app" refers to the driver app.)

Uber uses data from the Uber app to determine whether a driver can accept and provide rides. Data from the Uber app shows the driver's status in one of four categories: "available," which means the driver can receive a ride request; "en route," which means the driver is traveling to pick up a rider after a ride request was accepted; "on trip," which means the driver is transporting a rider after pickup; and "offline," which means the driver is not available to receive a ride request in the Uber app.

Data from the Uber app provides GPS coordinates indicating where the driver is located when the driver becomes "available" to receive trip requests, is "en route," "on trip," or goes "offline." Uber's records reflect every trip Mr. Wilson made on the night of the accident. The Uber app data "showed that Wilson was not logged 'online' to the [Uber app] at the time and location of the Subject Accident" (and Mr. Wilson admits he was not logged into the Uber app at the time of the accident, was not transporting anyone and was not on his way to pick up a rideshare rider at the time of the accident).

3

Mr. Wilson last logged off in the Uber app at 2:24 a.m. on January 19, 2020, at specified GPS coordinates in West Los Angeles, and the accident occurred more than one mile from where Mr. Wilson's status changed to "offline."[1] "Wilson testified that he was 'done driving [for Uber] for the night' when he struck Plaintiff."[2]

An Uber representative testified that drivers "could have the app open on their phone and still be off-line related to accepting trip requests"; drivers could switch from "offline" to "available" by tapping a button on their screens, and could toggle back and forth within 30 seconds; and drivers are able to view a map showing "surge areas" while they are in offline status. ("Surge pricing" occurs in areas where many people are requesting rides at the same time (because of bad weather, rush hour, or special events) and there are not enough cars on the road to take them all.)

## 2. Mr. Wilson's Evidence

Mr. Wilson's deposition testimony and interrogatory answers concerning where he drove and for how long on the night of January 18, 2020, *before* he went offline at 2:24 a.m. on

---

[1] Plaintiff admits Mr. Wilson's status changed to "offline" more than a mile away from the collision, but disputes whether Mr. Wilson himself turned off the Uber app. Uber representative Todd Gaddis was asked at his deposition, "Are you able to determine, based on your review of these four rows of app status data for 2:24 a.m. . . . , whether the row was activated by the driver doing something within the app versus the app automatically doing something on its own?" and Mr. Gaddis answered, "No, I cannot." But there is no evidence to suggest the Uber app "d[id] something on its own."

[2] Mr. Wilson remained offline until February 11, 2020.

4

January 19, were inconsistent with each other and with Uber's records. We describe this evidence because plaintiff relies on it to show there are fact issues for a jury to decide.

In verified answers to plaintiff's special interrogatories on December 15, 2020, Mr. Wilson stated he was on his way home from picking up food at McDonald's when the accident happened. He also stated he did not recall how many hours he had been driving before the accident. He stated he drove for Uber for about 30 to 40 minutes before the accident, turned the Uber app off and went home, and once he got home, he realized he was hungry and left his house a few minutes later to pick up McDonald's.

At his deposition on November 11, 2021, Mr. Wilson testified he left home sometime after midnight after being home all day, drove two short trips for Uber in West L.A., then cut off his app and went to the McDonald's drive-through and bought food for himself, his daughter and her friend, around 2:00 a.m., and was on his way home from McDonald's when the accident occurred. He said he was driving for Uber for "[p]robably close to two hours" before he went to McDonald's. (Uber's data show Mr. Wilson was driving for Uber for almost five hours before he went offline at 2:24 a.m.)

Mr. Wilson also testified the McDonald's was at 11920 Wilshire Boulevard, five minutes away from where he dropped off his passenger, and that it was about 15 to 20 minutes from the drop-off of his last passenger to McDonald's and then to the accident location. (Uber records together with Google Maps evidence from plaintiff show Mr. Wilson was in the vicinity of 1747 Beloit Avenue in West Los Angeles when he went offline, a location 1.6 miles from the McDonald's.)

### 3. The Arguments and the Trial Court's Ruling

Uber argued it could not be vicariously liable for Mr. Wilson's alleged negligence because the undisputed material facts demonstrated that Mr. Wilson was not on the Uber platform at the time of the accident, but rather was acting within his own personal capacity, so plaintiff could not establish a necessary element of his case: that Mr. Wilson was acting in the course and scope of his employment.

Plaintiff argued there was a dispute as to whether Mr. Wilson was acting as an Uber driver at the time of the accident, based on the evidence that Uber drivers can freely toggle between "offline" and "available," and Mr. Wilson "would have been able to view a map showing 'surge areas,'" and could have used that information to drive to the location of a surge to get the benefit of a heightened price. Plaintiff also argued it was unclear whether Mr. Wilson was driving for Uber at the time of the accident because of the inconsistencies between his recollections of what he was doing before he went offline and Uber's records of his activity that day, affecting his credibility.

Both parties also presented public policy arguments to the trial court.

The trial court granted summary judgment, concluding plaintiff did not meet his burden of showing a dispute as to a material fact. The court declined to entertain plaintiff's first argument—that Mr. Wilson could have been driving to a surge area after he went offline—as speculation. The court observed "[a]dditionally," that "case law, statute, and public policy" did not support a framework in which a rideshare company "would effectively be liable for employees whenever they drive their cars with a phone connected to the internet."

The court also rejected plaintiff's second argument—the inconsistencies between plaintiff's recollection of his activity

6

before he went offline and Uber's records—as immaterial. The court found "no dispute or confusion as to whether Wilson had his Uber app active at the time of the incident," and noted additionally that Mr. Wilson's mention that his last ride was in the UCLA area matched Uber's location data for where he turned off his Uber app. "What Wilson was doing prior to the incident is irrelevant beyond establishing whether he was acting as an Uber driver at the time of the incident. All evidence supports a finding that he was not acting as an Uber driver at the time of the incident," and "there is no evidence provided that indicated Wilson was not done driving for the night." The trial court added that "this again presents a dangerous argument that imbues liability on rideshare companies for negligence committed by rideshare agents even when 'offline,' and not transporting passengers."

Judgment was entered in favor of the Uber parties and plaintiff filed a timely notice of appeal.

## DISCUSSION

### 1. The Standard of Review

A defendant moving for summary judgment must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) Summary judgment is appropriate where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.*, subd. (c).)

Our Supreme Court has made clear that the purpose of the 1992 and 1993 amendments to the summary judgment statute was " 'to liberalize the granting of [summary judgment] motions.' " (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th

536, 542.) It is no longer called a "disfavored" remedy. (*Ibid.*) "Summary judgment is now seen as 'a particularly suitable means to test the sufficiency' of the plaintiff's or defendant's case." (*Ibid.*) On appeal, "we take the facts from the record that was before the trial court . . . . ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' " (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

## 2. Contentions and Conclusions

We begin with a preliminary comment. Plaintiff criticizes the trial court for several of its observations, such as that under plaintiff's theory, a rideshare company "would effectively be liable for employees whenever they drive their cars with a phone connected to the internet." Plaintiff asserts the trial court's summary judgment was "based on public-policy perspectives as opposed to the existence of a triable issue of fact," and that we should not "bless the trial court's decision to ignore the summary judgment standard of review."

We do not see the trial court's ruling as "based on public-policy perspectives." It was based on the absence of any dispute on the *material* facts. Our review of the record compels us to agree with the trial court's assessment that "[a]ll evidence supports a finding that [Mr. Wilson] was not acting as an Uber driver at the time of the incident," and "there is no evidence provided that indicated Wilson was not done driving for the night." Since that is so, the trial court's ruling was entirely consonant with the statutory requirements for summary judgment we have just described.

We turn to plaintiff's arguments for a contrary conclusion.

8

Plaintiff's first contention is that "[a] jury should have determined whether [Mr.] Wilson was acting 'in the course of Uber's business' when he hit [plaintiff] with his car." The core of plaintiff's argument is that the Uber app was always open on Mr. Wilson's phone, so when he went offline at 2:24 a.m., he *could have* been looking for a surge, he *could have* seen a surge (had there been one, of which there is no evidence), and he *could have* been driving toward a surge area in offline status when the collision occurred, intending to switch to "available" status when he got there. There are too many "could haves" in this speculative scenario, and there is no support for it in the evidence.

The evidence plaintiff relies on is the undisputed evidence on surge pricing and that Mr. Wilson never closed the Uber app on his phone. Plaintiff cites Uber's records showing the times of all Mr. Wilson's statuses and locations while driving for Uber for the five weeks preceding and on the night of the collision. These records show, plaintiff says, that Mr. Wilson frequently toggled between "available" and "offline" while he was driving. Plaintiff also cites Mr. Wilson's affirmative response to the question, "So *if your app is on and you're in the available status*, prepared to accept a ride, you can see the red surge zones on the—the map on the app screen, and you can drive towards it to try to pick up rides in the surge zone area?" (Italics added.) Mr. Wilson answered, "Yes, if I want to." He also testified that "you can make more money picking up a ride in a surge versus no surge." Plaintiff tells us that "most importantly, [plaintiff] presented evidence that Wilson toggled between 'available' and 'offline' multiple times during the five hours the [*sic*] he drove for Uber *on the night of the collision*."

In the first place, none of the above is evidence that, when he toggled between "available" and "offline," Mr. Wilson was in fact driving toward a surge zone in offline status—on the night of the collision or at any other time. Moreover, and "most importantly," the evidence does *not* show "that Wilson toggled between 'available' and 'offline' multiple times during the five hours the [*sic*] he drove for Uber *on the night of the collision.*" Quite the opposite: The evidence shows he went to offline status once—for six seconds, from 12:40:58 a.m. to 12:41:06 a.m.— during the almost five hours he drove for Uber that night.[3]

In short, there is nothing here for a jury to decide; plaintiff's claim of what Mr. Wilson "could have" done is complete speculation, and juries are not permitted to speculate.

Plaintiff asserts the data showed "a triable issue of fact as to whether [Mr. Wilson] was *actually* 'done driving' at 2:24 a.m.," or whether he was "toggl[ing] back-and-forth between 'available' and 'offline' " consistent with his "recent behavior." Plaintiff says Uber's records show Mr. Wilson frequently toggled between "available" and "offline" while he was driving, "with gaps between the two that were *much* longer than the four-minute interval between 2:24 a.m. and 2:28 a.m.," and at times he drove much

---

[3] Similarly, plaintiff follows that misstatement of the evidence with the statement that "[t]o increase the amount of money he made from Uber, Wilson would identify himself as 'offline' in his Driver App, and drive towards a 'surge zone.' " That misstates the evidence, too. The only evidence plaintiff cites is the undisputed fact that 7.5 percent of Mr. Wilson's earnings during the five weeks before the accident were bonuses for surge rates. This is evidence he sometimes drove to or in surge zones, but it is not evidence he "would identify himself as 'offline' in his Driver App" while doing so.

10

later than 2:28 a.m.  For this plaintiff cites 60 pages of earnings records for Mr. Wilson, but does not identify where in that data any particular items supporting the assertion can be found.  In any event, whether he intended to drive later (and there is no evidence of that) is irrelevant to his status at the time of the accident, when he was indisputably offline and unable to receive or accept requests for rides.

Plaintiff also insists a jury should have determined whether Wilson is a credible witness, because his testimony about how long he had been driving and where he drove before he went offline (see *ante,* at pp. 5-6) was contradictory and conflicted with Uber's records.  Plaintiff concludes that "[b]ecause a reasonable juror could conclude that Wilson is not a credible witness, a reasonable juror could also conclude that Wilson was not 'done driving for the night.' "  As we have already stated, what Mr. Wilson planned to do later in the night is irrelevant; Uber's records confirm exactly where and when Mr. Wilson went offline, that is, at 2:24 a.m. and more than a mile from the accident site.  (Cf. *Morales-Simental v. Genentech, Inc.* (2017) 16 Cal.App.5th 445, 461 ["any credibility issues surrounding [the employee-driver]'s testimony were not material to the resolution of the . . . issue on which the [summary judgment] motion turned"]; *Richards v. Department of Alcoholic Beverage Control* (2006) 139 Cal.App.4th 304, 319 ["Summary judgment generally cannot be denied based on lack of credibility alone."].)

Plaintiff's insistence that Mr. Wilson could not have both gone to McDonald's, bought food, and driven to the accident site in the four or five minutes after he went offline, does not change the undisputed fact that he went to offline status at 2:24 a.m. at a location in West Los Angeles that was a mile or so from the scene

11

of the accident, and called 9-1-1 to report he hit a pedestrian at 2:28 a.m. The rest is immaterial. The undisputed material facts show Mr. Wilson was not acting as an Uber driver at the time of the accident.

## DISPOSITION

The judgment in favor of the Uber parties is affirmed. The Uber parties to recover costs on appeal.


GRIMES, J.

WE CONCUR:


STRATTON, P. J.


VIRAMONTES, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MACKENZIE YOUNG JAY KIM, | B331247 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. 20STCV25305 |
| v. | **ORDER CERTIFYING OPINION FOR PUBLICATION** |
| UBER TECHNOLOGIES, INC., et al., | |
| Defendants and Respondents. | **[No Change in Judgment]** |

THE COURT:

      The opinion in the above-entitled matter filed on August 30, 2024, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

      There is no change in the judgment.

_____

STRATTON, P. J.      GRIMES, J.      VIRAMONTES, J.